GRIFFIS, J., for the Court.
¶ 1. Amy R. Hollingsworth appeals the decision of the Mississippi Department of Employment Security (MDES) denying her unemployment benefits. She argues that the board of review’s finding that she failed to accept suitable work without good cause is not supported by substantial evidence, and the board of review’s determination, pursuant to Mississippi Code Annotated section 71-5-19(4), that she must repay benefits received was in error. Finding no error, we affirm.
FACTS
¶2. Hollingsworth was an employee of The Eyeglass Factory in Pascagoula, Mississippi. Hollingsworth answered the telephone and distributed contact lenses to The Eyeglass Factory’s customers. Her last day of work was August 26, 2005, which was the Friday before Hurricane Katrina devastated the Mississippi Gulf Coast.
¶3. After the hurricane, The Eyeglass Factory re-opened on September 9, 2005, to clean up the store and supply its customers with needed glasses and contacts. On September 16, 2005, Dr. Brian Spencer, one of the owners, contacted Hollings-worth and asked her to return to work so that she could assist customers. Hollings-worth initially told Dr. Spencer that she could not return until October 3, 2005, because this was when the schools were going to open, and she did not have anyone to watch her three children.
¶ 4. During her hearing before the appeals officer, Hollingsworth testified that she eventually agreed to return to work because Dr. Spencer said she could bring her children to work. Also, Hollingsworth thought her hours would remain 8:00 a.m. to 2:00 p.m. When Dr. Spencer informed her that she would have to work a full day,[1] Hollingsworth told Dr. Spencer that she would not return to work because she could not work those hours with her children present. On appeal to the board of review, the circuit court, and now this Court, Hollingsworth argued that she did not return to work because it was a health hazard for her three sons. She argued that the business did not have electricity, was covered in mold, and was generally unsafe. Hollingsworth did not make these arguments to the claims examiner or the appeals officer. The board of review adopted the factual findings of the appeals officer and affirmed the officer’s decision. The Circuit Court of Jackson County affirmed the board of review’s decision.
STANDARD OF REVIEW
¶ 5. The standard of review of administrative agency decisions is “an agency’s conclusions must remain undisturbed unless the agency’s order: 1) is not supported by substantial evidence, 2) is arbitrary or capricious, 3) is beyond the scope or power granted to the agency, or 4) violates one’s constitutional rights.” Max *395 well v. Miss. Empl. Sec. Comm’n, 792 So.2d 1031, 1032(¶ 7) (Miss.Ct.App.2001). Upon judicial review, “the findings of the board of review as to the facts, if supported by substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law.” Miss.Code Ann. § 71-5-531 (Rev.2000). With these standards in mind, we look to the issues raised in this appeal.
ANALYSIS

I. Whether or not the finding of the board of review that Hollingsworth failed to accept suitable work without good cause is supported by substantial evidence?

¶ 6. Mississippi Code Annotated section 71 — 5—513(A)(3) (Supp.2006) states, “[a]n individual shall be disqualified for benefits .... (3) If the department finds that he has failed, without good cause, ... to accept suitable work when offered to him ....” (emphasis added). When determining if work is suitable, this statute considers: “among other factors the degree of risk involved to his health, safety and morals, his physical fitness and prior training, his experience and prior earnings, his length of employment and the distance of available work from his residence.... ” Miss.Code Ann. § 71-5-513(A)(3)(a).
¶ 7. Hollingsworth claims that she was not offered suitable work because the offer required a different working environment than her pre-hurricane job, different duties, and different hours.

A. Unsafe work environment

¶ 8. Hollingsworth says that she cannot be denied benefits for refusing to expose her children and herself to the dangers of a post-hurricane work environment. She argues “that an employee has the right to walk off a job that threatens death or serious bodily injury.” Miss. Empl. Sec. Comm’n v. Noel, 712 So.2d 728, 731(¶ 9) (Miss.Ct.App.1998). Under Noel, we applied earlier supreme court case law to find that employees cannot be denied benefits because they refused to do work that is hazardous to their health. Id. at 731-32 (applying Mississippi Empl. Sec. Comm’n. v. Phillips, 562 So.2d 115, 116-17 (Miss.1990)). Hollingsworth cites Noel for the proposition that the new work her employer offered her was unsuitable because it was hazardous to her and her children.
¶ 9. Hollingsworth did not present this argument to the appeals officer. Instead, Hollingsworth argued to the appeals officer that' she could not handle her children being “under foot” at work. When asked why she did not return to work, Hollings-worth testified:
I have brought my children [to work] before, they have been there a few hours and you could just see, it’s not the place for them to be. You have people who would come in there sick, because we shared the office with a Medical Doctor, and it wasn’t fair to the patients, it wasn’t fair to the patients. The kids running up and down the steps.... I would not have been able to do it. I have had them there before like I said and it stresses me out. And to do it for one day, it would have been fine, but to do it every day for two weeks, there’s no possible way.
¶ 10. Hollingsworth asserted her unsafe work environment theory for the first time on appeal to the board of review. She sent the board of review printouts from the Environmental Protection Agency’s Hurricane Katrina website. These printouts are the only evidence in the record that mention that a post-hurricane environment can be hazardous.
*396 ¶ 11. We have previously discussed how this Court should regard evidence such as this in an administrative appeal. We held that “if hearsay, even if not corroborated in the traditional sense, is highly probative because it has strong indicia of reliability, it can at least in many situations be substantial evidence.” McClinton v. Miss. Dep’t of Empl. Sec., 949 So.2d 805, 814(¶ 29) (Miss.Ct.App.2006) (emphasis added).
¶ 12. On appeal, the board of review did not address Hollingsworth’s new argument, and it simply adopted the factual findings of the appeals officer. Thus, we must conclude that the board of review gave little if any weight to this “new” evidence. We agree with the board of review’s decision. This evidence does not exhibit any indicia of reliability because there is no way to determine if the documents presented are authentic or even applicable. These documents merely state that a post-hurricane environment may be dangerous to children. There is no evidence that any of the environmental hazards described in these printouts pertained to The Eyeglass Factory after the hurricane. Looking at the record, we cannot say that there is any evidence, much less substantial evidence, that The Eyeglass Factory constituted a health hazard, which could lead to “death or serious bodily injury.” Noel, 712 So.2d at 731 (¶ 9).

B. Different hours and different duties

¶ 13. Hollingsworth also argues that she was not offered suitable work because the new job had different hours and different duties than her pre-hurricane job. In Hollingsworth’s pre-hurricane job, she dealt with customers in person and on the telephone. She also ordered contacts, dispensed contacts to the customers, and worked from 8:00 a.m. until 2:00 p.m. After the hurricane, The Eyeglass Factory wanted her to continue to assist customers, help with minor repairs to the shop caused by the hurricane, and work from 8:00 a.m. until the end of the day.
¶ 14. In Sunbelt Ford-Mercury, Inc. v. Mississippi Employment Security Commission, 552 So.2d 117 (Miss.1989), an employee left his job because the employer wanted to change his job from that of an account manager to that of a salesman. Id. at 118. The employer increased his hours by one hour, days worked by one day, and decreased his salary. Id. The Mississippi Supreme Court found that this new offer of employment was suitable and that the employee could not refuse it and receive unemployment benefits. Id. at 120.
¶ 15. Hollingsworth’s employer needed her to return to work and agreed to accommodate her by letting her bring her children to work. He also said that she would still be assisting customers and that she would have to help with clean up after the hurricane. Furthermore, he only increased her work day by approximately two to three hours. Like the court in Sunbelt, we cannot say that her employer’s new offer of employment was unsuitable. We find that the board of review’s decision was supported by substantial evidence, and we affirm.

II. Whether or not Hollingsworth must repay her benefits.

¶ 16. Mississippi Code Annotated section 71-5-19(4) (Supp.2006) provides:
Any person who, by reason of nondisclosure or misrepresentation by him or by another of a material fact, irrespective of whether such nondisclosure or misrepresentation was known or fraudulent, or who, for any other reason has received any such benefits under this chapter, while any conditions for the receipt of benefits imposed by this chapter were *397 not fulfilled in his case, or while he was disqualified from receiving benefits, shall, in the discretion of the department, either be liable to have such sum deducted from any future benefits payable to him under this chapter or shall be liable to repay to the department for the Unemployment Compensation Fund a sum equal to the amount so received by him....
(Emphasis added).[2]
¶ 17. Hollingsworth argues that the order requiring her to repay the benefits that she received is not in accordance with Mississippi law. She relies on Caraway v. Mississippi Employment Security Commission, 826 So.2d 100, 102-3 (¶ 8) (Miss.Ct.App.2002). The Caraway court held that the commission cannot actively seek repayment of benefits unless it finds: “1) A person received benefits, 2) at a time when he was ineligible, 3) by reason of a nondisclosure or a misrepresentation of a material fact, 4) made by that person or another, 5) irrespective of fraudulent intent or knowledge of the omitted or misrepresented fact.” Id. at 102-3(¶ 8) (quoting Miss. Empl. Sec. Comm’n v. Sellers, 505 So.2d 281, 283 (Miss.1987)). The Caraway court stated further that “[t]he Commission’s findings do not express that this is a case of fraud. The Commission may not pursue active collection measures against Caraway. The Commission may offset any future payments payable to Caraway by the amount of overage erroneously paid to Caraway.” Caraway, 826 So.2d at 103 (¶8). Thus, Hollingsworth argues that the MDES cannot pursue collection measures against her. Instead, it may only offset future payments she may receive.
¶ 18. MDES acknowledges Caraway as precedent. However, it argues that this Court should reconsider the Mississippi Supreme Court’s interpretation of section 71-5-19(4) because it has failed to account for the phrase “for any other reason.” Miss.Code Ann. § 71-5-19(4). MDES says that this phrase means that it may at its discretion “either ... have such sum deducted from any future benefits payable to [Hollingsworth] under this chapter or ... [make her] liable to repay the amount [she] ... received....” Id. (emphasis added).
¶ 19. The Mississippi Supreme Court adopted Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) in Mississippi Gaming Commission v. Imperial Palace of Mississippi, Inc., 751 So.2d 1025, 1029 (¶ 16) (Miss.1999). The supreme court found that if a statute is ambiguous, a court should “apply a deferential standard under which the issue is whether an agency’s interpretation is a reasonable construction.” Id. at 1029 (¶ 16). The court stated further, “the court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding.” Id. (quoting Chevron U.S.A., Inc., 467 U.S. at 843 n. 11, 104 S.Ct. 2778). While this Court would normally defer to MDES’s interpretation of “for any other reason,” we are bound by the test established by the Mississippi Supreme Court. See Sellers, 505 So.2d at 283.
¶ 20. Therefore, we will apply the Sellers test, which we previously used in Caraway, to the facts of this case. The following facts are undisputed. MDES paid benefits to Hollingsworth. She was ineligible to receive benefits at that time because she had refused suitable work. *398 MDES paid these benefits because Holl-ingsworth did not tell MDES that she had refused suitable work, which was a material fact. MDES did not acquire this knowledge until The Eyeglass Factory informed the department that they had offered Hollingsworth a new job. This omission or misrepresentation is directly attributable to Hollingsworth. Therefore, MDES has met all of the requirements of the test in Caraway, and we affirm the decision of the board of review that MDES may actively pursue collection measures against Hollingsworth.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY IS AFFIRMED.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, BARNES, ISHEE, ROBERTS AND CARLTON, JJ„ CONCUR.

. During the hearing with the appeals officer, Hollingsworth stated that she assumed “end of the day” meant 5:30 p.m. However, the employer's witness said that they only worked until 4:00 p.m. until sometime around October because of the curfew imposed after the hurricane.

. Effective July 1, 2007, Section 71-5-19(4) has been amended.