712 So.2d 728 (1998)
MISSISSIPPI EMPLOYMENT SECURITY COMMISSION, Appellant,
v.
Bobbie A. NOEL, Appellee.
No. 97-CC-00018 COA.
Court of Appeals of Mississippi.
April 21, 1998.
*729 Albert B. White, Jackson, for Appellant.
Katrina M. Bibb Gibbs, Isaac K. Byrd, Jr., Jackson, for Appellee.
Before THOMAS, P.J., and COLEMAN and HINKEBEIN, JJ.
HINKEBEIN, Judge, for the Court:
¶ 1. The Mississippi Employment Security Commission (MESC) seeks review of an order of the Hinds County Circuit Court, reversing the agency's denial of Bobbie A. Noel's claim for unemployment compensation benefits. Noel was discharged in March 1996 from her employment at Cal-Maine Farms, Inc., in Edwards, Mississippi. When she applied for unemployment compensation benefits, she was denied payment because of her "misconduct." Noel appealed the denial of benefits through the administrative procedures of the MESC, which resulted in a final decision from the Board of Review of the MESC affirming the denial of benefits. Aggrieved by this decision, Noel requested judicial review. Thereafter, Judge Breland H. Hilburn Jr. concluded that she had been prematurely terminated "without a justifiable basis," making her eligible for compensation. It is from that decision that the MESC appeals to this Court on the following grounds:
I. WHETHER THE CIRCUIT COURT ERRED BY FAILING TO FOLLOW THE APPLICABLE STANDARD OF REVIEW AND AFFIRM THE BOARD'S DECISION WHERE SUBSTANTIAL RECORD EVIDENCE SUPPORTED THE BOARD'S DECISION?
II. WHETHER THE CIRCUIT COURT ERRED BY FAILING TO FOLLOW THE APPLICABLE STANDARD OF REVIEW WHERE SUBSTANTIAL RECORD EVIDENCE SUPPORTED THE BOARD'S DECISION AND THE LAW WAS CORRECTLY APPLIED TO THE FACTS?
III. WHETHER THE CIRCUIT COURT ERRED IN REVERSING THE BOARD BY INAPPROPRIATELY IGNORING THE FACTS RELIED UPON BY THE TRIER OF FACT, THE BOARD, AND THUS BY SUBSTITUTING ITS OPINION FOR THAT OF THE BOARD?
Holding these assignments of error to be without merit, we affirm the judgment of the circuit court.

FACTS
¶ 2. According to evidence examined by the appeals referee, Noel had been employed for one and a half years as a "milker" in Cal-Maine's dairy when she developed carpal tunnel syndrome, a medical condition evidenced by chronic wrist pain. At the behest of her physician, Noel underwent corrective surgery to both wrists in late 1995 and was absent from work until February 29, 1996, when she was released to return. Upon her arrival at Cal-Maine, Noel was reassigned to general housekeeping duty because her previous position had since been filled. Despite having effectively demoted Noel, plant managers offered her the same rate of pay to which she had become accustomed. Consequently, Noel overcame her initial displeasure with the situation and spent the next several days scrubbing various areas of the facility.
¶ 3. Then on March 6, according to Noel's uncontroverted testimony, when instructed to wash the walls of the facility's employee lounge, she informed supervisors that her wrists had begun to swell anew. Since no restrictions had officially been placed on her physical capabilities, Noel's superiors responded with instructions to return to her surgeon for a medical certificate documenting the alleged tenderness. In turn, Noel disclosed that she indeed had already scheduled *730 a doctor's appointment for the following day. While this portion of the exchange seems to have been fairly cordial, an impasse formed when Noel was directed to continue cleaning in the meantime. She balked at this suggestion, stating that under no circumstances would she be doing so. While she now denies having intended it as such, Noel's supervisor interpreted the refusal to be absolute  an indication that she considered the upcoming physical examination irrelevant and, regardless of the outcome, would not perform the assigned duties. On that basis, Noel's employment was immediately terminated.
¶ 4. The next day, an orthopaedic surgeon examined Noel's wrists. While adhering to his earlier conclusion regarding her readiness to return to work, the physician prescribed medication for her pain and noted that her condition might indeed necessitate restriction to light duties, perhaps with "reasonable accommodation in the workplace including pacing and intermittent breaks or job rotation." Thereafter, on March 13, Noel applied for unemployment benefits with the MESC, the denial of which brings her case before this Court.

ANALYSIS
I. WHETHER THE CIRCUIT COURT ERRED BY FAILING TO FOLLOW THE APPLICABLE STANDARD OF REVIEW AND AFFIRM THE BOARD'S DECISION WHERE SUBSTANTIAL RECORD EVIDENCE SUPPORTED THE BOARD'S DECISION?
II. WHETHER THE CIRCUIT COURT ERRED BY FAILING TO FOLLOW THE APPLICABLE STANDARD OF REVIEW WHERE SUBSTANTIAL RECORD EVIDENCE SUPPORTED THE BOARD'S DECISION AND THE LAW WAS CORRECTLY APPLIED TO THE FACTS?
III. WHETHER THE CIRCUIT COURT ERRED IN REVERSING THE BOARD BY INAPPROPRIATELY IGNORING THE FACTS RELIED UPON BY THE TRIER OF FACT, THE BOARD, AND THUS BY SUBSTITUTING ITS OPINION FOR THAT OF THE BOARD?
¶ 5. On appeal, employees such as Noel are shouldered with the burden of overcoming a rebuttable presumption in favor of the Board's decision. Mississippi Code Annotated § 71-5-531 (Rev. 1995) (requiring that the Board's factual findings, if supported by evidence, be viewed as conclusive and confining judicial review to questions of law). The denial of benefits may be disturbed only if (1) unsupported by substantial evidence, (2) arbitrary or capricious, (3) beyond the scope of power granted to the agency, or (4) in violation of the employee's constitutional rights. Miss. Comm'n on Envtl. Quality v. Chickasaw County Bd. of Supervisors, 621 So.2d 1211, 1215 (Miss. 1993). Although the Board's argument appears in the form of three separate assignments of error, each poses the same question  whether the circuit court overstepped these bounds. We therefore address these assignments of error together, fully aware that the same limited standard of review applies here.
¶ 6. We must initially note, as did the circuit court in its opinion, that the facts as found by the appeals referee and later adopted by the full Board are indisputably at odds with the evidence. Noel's hearing testimony, inasmuch as it related to her impending doctor's appointment, is virtually indistinguishable from that of her supervisor. According to both, there was never a question as to her willingness to see a physician. Nevertheless, the appeals referee concluded otherwise, writing "the claimant refused to go to the doctor ... [she] would not do as instructed and would not provide her employer with any medical documentation that she could not do the work... ." Since it had a significant bearing on the outcome, this wholly unsubstantiated finding might alone invite reversal. Nevertheless, we feel compelled to address the inaccurate application of Mississippi case law that followed.
¶ 7. Section 71-5-513(A)(1)(b) of the Mississippi Code allows for the denial of unemployment compensation benefits to any employee discharged for "misconduct connected with his work." Although Mississippi's legislature *731 has remained silent as to the meaning of the phrase, our supreme court has over the years discussed the term "misconduct" in a series of cases beginning with Wheeler v. Arriola, 408 So.2d 1381, 1383 (Miss. 1982). In the Wheeler opinion, the only authority upon which the appeals referee relied, misconduct was described as "conduct evincing such willful and wanton disregard of the employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee." Wheeler, 408 So.2d at 1383. While extreme carelessness indicative of an intentional or substantial disregard of the employer's interests was deemed an acceptable basis for the denial of benefits, mere inefficiency due to incapacity, ordinary negligence, and good faith errors in judgment were excluded from the meaning of the statute. Id. Noel's admission that she defied a clear directive initially suggests the applicability of this early definition. Indeed, such was the rationale cited below. However, because Noel's behavior is alleged to fall within a subsequently defined sub-category known as insubordination, a more refined analysis is required. Shannon v. Miss. Employment Security Comm'n., 549 So.2d 446, 449 (Miss. 1989). The proper question is whether Cal-Maine carried the preliminary burden of proving by substantial, clear, and convincing evidence that Noel engaged in a "constant or continuing intentional refusal to obey a direct or implied order, reasonable in nature, and given by and with proper authority." Shannon, 549 So.2d at 450 (quoting Sims v. Bd. of Trustees, Holly Springs Mun. Separate School Dist., 414 So.2d 431, 435 (Miss. 1982)).
¶ 8. As a consequence of the legislatively mandated deference described above, the supreme court typically answers this query in the affirmative, occasionally fulfilling the "continuing" aspect of the definition with seemingly benign details such as repeated demonstrations of unpleasantness. See Westbrook v. Greenville Council on Aging, 599 So.2d 948, 950 (Miss. 1992) (continuing hostility and uncooperative attitude); Sims, 414 So.2d at 433 (refusal to follow directive after failure to account for employer materials and years of non-cooperation). Indeed, court opinions rarely express an interest in the underlying reason(s) for resistance. See Richardson v. Miss. Employment Security Comm'n., 593 So.2d 31 (Miss. 1992) (loss of driver's license, despite employee's claimed ignorance, provided adequate basis for termination where required as condition of employment). However, a greater willingness to examine an employee's professed rationale exists where the behavior is restricted to a single, isolated episode. The most factually similar of these cases is Gore v. Miss. Employment Security Comm'n., 592 So.2d 1008, 1010 (Miss. 1992), which involved the termination of an employee for revealing to co-workers, in violation of company confidentiality policies, the amount of her annual bonus and upcoming raise. Gore, 592 So.2d at 1009. Although Ms. Gore had been specifically advised that such behavior would be considered grounds for immediate dismissal, the court characterized her behavior as merely an exercise of poor judgment, insufficient to prevent her receipt of compensation since her performance had otherwise been satisfactory. Id. The case is directly on point since, aside from one unexplained reprimand given immediately upon her return to Cal-Maine, Noel's personnel record is also without reproach. As such, we are compelled to examine her motivation as expressed to superiors.
¶ 9. This inquiry brings us to Miss. Employment Security Comm'n. v. Phillips, 562 So.2d 115 (Miss. 1990), a case in which our supreme court held that an employee has the right to walk off a job that threatens death or serious bodily injury. Phillips, 562 So.2d 115, 117. Where the fear is reasonable and its awareness is thus attributable to the employer, the employee's refusal of the assignment is insufficient cause for the denial of benefits. Id. Certainly, the potential for danger in Phillips, which involved an assignment to correct a potential blow-out on an oil drilling rig in the Gulf of Mexico, rose far above that in Noel's case. Id. at 116. However, even in a case such as this where Noel faced only the potentially painful completion of her shift, the opinion still advocates some degree of restraint where health-related concerns have prompted the disobedience. Since her unprecedented resistance was predicated upon complaints of agonizing pain, *732 Noel's supervisor should have given her the additional time necessary for medical assessment. The risks of such a hasty decision are underlined by the diagnosis ultimately given Noel by her physician, immaterial though it be to our determination. Because we agree that Cal-Maine terminated Noel prematurely, these assignments of error are without merit.
¶ 10. THE JUDGMENT OF THE CIRCUIT COURT OF THE SECOND JUDICIAL DISTRICT OF HINDS COUNTY IS AFFIRMED.
BRIDGES, C.J., McMILLIN and THOMAS, P.JJ., and COLEMAN, DIAZ, HERRING, KING, PAYNE and SOUTHWICK, JJ., concur.